NOT FOR PUBLICATION                                              CASE CLOSED

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
ST. LOUIS CHIROPRACTIC,                   :
                                          :
                                          :
              Plaintiff,                  :
                                          :         Civil Action No. 07-3110 (JAP)
      v.                                  :
                                          :         **OPINION**
                                          :
FEDERAL INSURANCE COMPANY, GREAT          :
NORTHERN INSURANCE COMPANY, and           :
CHUBB NATIONAL INSURANCE COMPANY,         :
                                          :
                                          :
              Defendants.                 :
_____ :

Presently before the Court is the motion of Defendants, Federal Insurance Company,

Great Northern Insurance Company, and Chubb National Insurance Company's[1] (collectively,

"Defendants") to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. Rule 12(b)(1) and

12(b)(6). The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332. Having

considered all arguments presented, the Court grants Defendants' motion to dismiss.

### I.      Background

Plaintiff is a Minnesota chiropractic clinic, which provides services in St. Louis Park,

Minnesota. Defendants are foreign corporations within the Chubb Group of Insurance

_____

[1] Defendant, Chubb National argues that it is not a proper party to the action and that the Policy
upon which Plaintiff is suing was issued by a separate corporate entity, Chubb Indemnity Insurance
Company. In light of the Court's decision, the Court declines from addressing this issue.

Companies.  Defendants are in the business of providing insurance, with their principal place of business in Warren, New Jersey.  Defendants conduct and do business in New Jersey.

In the automobile insurance industry, medical payments coverage is a contractual form of "no-fault" coverage entered into between the insurance company and the insured for payment of medical bills.  Personal injury protection coverage ("PIP") also provides no-fault coverage for payment of medical bills.  No-fault, or MedPay, coverage provides for prompt medical treatment, up to policy limits, in order to mitigate harm and improve recovery from injury.  Coverage also helps relieve any anxiety individuals may have regrading the availability of funds for medical expenses.

Plaintiff alleges that Chubb utilizes a fee review software ("fee review"), licensed from the Corvel Corporation, which compares the amount billed for a procedure to percentile benchmarks an insurer selects.  If there is a portion of the charge that exceeds the benchmark, that portion of the claim is excluded from coverage.  The percentile benchmarks are embedded into the software and used to adjust and audit first-party claims for medical expenses.  Coverage exclusions are explained in the "Explanation of Benefits" ("EOB") form, under the "Reduction" section, provided to Plaintiff.  The EOB states that the charges are compared to the prevailing billing practices for medical providers within the geographic area and that the reimbursement rate could differ from the actual amount billed.

The insurance policy ("Policy") executed between the insured and Chubb National states that Chubb Indemnity will pay PIP benefits for reasonable medical expenses for necessary medical treatment, in the event of an automobile accident, in accordance with the Minnesota No-Fault Automobile Act.  The coverage limit was $20,000.  The Policy also contained express

-2-

policy exclusions and limitations.  To the extent there was a disagreement over coverage, in accordance with Minnesota law, disputes were required to be submitted to arbitration.  The Policy stated:

> If we and the eligible injured person making a claim for person injury protection benefits do not agree on the amount payable under this coverage, and the amount of the claim is $10,000 or less, the claim shall be submitted to binding arbitration pursuant to Minnesota Statutes Annotated § 65B.525.

Arnold Cert., Ex. B at 0087.

In 2007, Plaintiff, a licensed medical provider, treated an insured who sustained injuries in an automobile accident.  Medical expenses of the insured totaled over $100,000, of which Plaintiff billed $122.40 for its services.  After Plaintiff provided treatment and charged its customary fees, Plaintiff submitted proofs of claim and loss, including medical bills, to Chubb, as required under the Policy.  Chubb determined that it would cover the majority of Plaintiff's charges, but excluded $1.51 of the $122.40, based on the fee review, because the amount exceeded the capped amount and was deemed an unreasonable charge.  Chubb sent an EOB to Plaintiff, which set forth the "Bill Charges," "Reduction," and "Allowed Fees" as well as particular codes and a statement regarding the basis for the reduced payment.

## II.     Procedural History

On July 3, 2007, Plaintiff filed the present action against Defendants.  Generally, the Complaint alleges that Defendants' Policy requires payment of all reasonable expenses for necessary medical services.  Plaintiff claims that Defendants improperly use "computer-generated bill review reports" to arbitrarily discount PIP claims for first-party medical benefits

below the amounts billed by the insured's medical providers based on the fee review's artificial percentile reimbursement cap.

The Complaint contains four counts.  In Count One, breach of contract, Plaintiff alleges that Defendants breached the Policy by failing to pay all reasonable medical expenses as a result of their use of the fee review.  Count Two asserts that the alleged use and concealment of the fee review process violates the New Jersey Consumer Fraud Act ("NJCFA").[2]  Count Three alleges similar violations of the respective consumer fraud statutes of various other states.  In Count Four, Plaintiff seeks a declaration from the Court that Defendants have no right under the Policy to conduct a fee review that unilaterally caps payments according to a pre-determined percentile.

Further, Plaintiff seeks to represent a class of insureds and/or their assignees, pursuant to Fed. R. Civ. P. 23.  The putative class is named "Contract Class/NJ CFA Class" and includes those insureds who sustained injuries in a covered occurrence and:

> (a) submitted first-party claims for payment of medical expenses to Chubb; (b) had their claim submitted to a Corvel computer fee review; (c) received payment in an amount less than the submitted medical charge (but greater than zero) based on a fee-review "re-pricing" reduction; and [(d)] did not exhaust policy limits.

Compl. ¶¶ 20, 67.  Alternatively, the Complaint identifies a second putative class named "Contract and/or Statutory Fraud Sub-Class."  The alternate class membership is based on the same criteria as the first class, but limited to insureds in New Jersey, Minnesota, California, Florida, Illinois, Kentucky, Maryland, Oregon, and Washington.  *Id.*

Defendants filed their motion to dismiss Plaintiff's Complaint, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), on September 10, 2007.  Plaintiff opposed the motion.  On November 16,

---

[2] In Plaintiff's Opposition to Defendants' Motion to Dismiss, Plaintiff voluntarily withdrew its NJCFA claims.

2007, because a number of similar cases were simultaneously being filed by Plaintiff's counsel

and in the interests of judicial economy, the Court dismissed Defendants' motion without

prejudice, stated that the motion could be re-filed at a later time, and ordered a case management

conference to be scheduled.  On March 18, 2008, Defendants filed a supplemental brief in

support of their renewed motion to dismiss.  Plaintiff opposes the motion.  Having reviewed the

parties' submissions, the Court now decides the motion.

### III.    Standard of Review

Federal Rule of Civil Procedure 12(b)(1) allows a party to move for dismissal of a case

based on lack of subject matter jurisdiction.  FED. R. CIV. P. 12(b)(1).  The plaintiff bears the

burden of proving that subject matter jurisdiction properly exists in the federal court.  *Mortensen*

*v. First Federal Sav. and Loan Ass'n.*, 549 F.2d 884, 891 (3d Cir. 1977).  When considering a

motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), "no

presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material

facts will not preclude the trial court from evaluating for itself the merits of jurisdictional

claims."  *Id.*

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails

"to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  In considering a

Fed. R. Civ. P. 12(b)(6) motion, a court accepts as true all of the factual allegations within the

complaint and any reasonable inferences that may be drawn from them.  *Hayes v. Gross*, 982

F.2d 104, 106 (3d Cir. 1992).  Claims should be dismissed under Fed. R. Civ. P. 12(b)(6) where

"it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).  Though a court must

take as true all facts alleged, it may not "assume that the [plaintiff] can prove any facts that it has

not alleged." *Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters,*

459 U.S. 519, 526 (1983).  Further, on a Fed. R. Civ. P. 12(b)(6) motion, a court shall properly

reject any "conclusory recitations of law" pled within the complaint.  *Commonwealth of*

*Pennsylvania v. PepsiCo, Inc.,* 836 F.2d 173, 179 (3d Cir. 1988); *see Morse v. Lower Merion*

*School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (noting that "a court need not credit a complaint's

'bald assertions' or 'legal conclusions' when deciding a motion to dismiss").

Accordingly, a district court reviewing the sufficiency of a complaint has a limited role.

In performing that role, the court determines not "whether the plaintiffs will ultimately prevail,"

but "whether they are entitled to offer evidence to support their claims.  *Langford v. Atlantic*

*City,* 235 F.3d 845, 847 (3d Cir. 2000); *see also In re Burlington Coat Factory Sec. Litig.,* 114

F.3d 1410, 1420 (3d Cir. 1997); *Syncsort Inc. v. Sequential Software, Inc.,* 50 F. Supp. 2d 318,

325 (D.N.J. 1999); *In re MobileMedia Sec. Litig.,* 28 F. Supp. 2d 901, 922 (D.N.J. 1998).

Generally, the court's task requires it to disregard any material beyond the pleadings.  *Burlington*

*Coat,* 114 F.3d at 1426; *Pension Benefit Guar. Corp. v. White Consol.  Indus.,* 998 F.2d 1192,

1196 (3d Cir. 1993).

A district court may, however, consider the factual allegations within other documents,

including those described or identified in the complaint and matters of public record, if the

plaintiff's claims are based upon those documents.  *Burlington Coat,* 114 F.3d at 1426; *In re*

*Westinghouse Sec. Litig.,* 90 F.3d 696, 707 (3d Cir. 1996); *In re Donald Trump Sec. Litig.*, 7 F.3d

357, 368 n.9 (3d Cir. 1993); *Pension Benefit Guar. Corp.,* 998 F.2d at 1196.  In other words, the

-6-

court may review such documents that are "integral to or explicitly relied upon in the complaint,"

*Burlington Coat,* 114 F.3d at 1426 (citation and quotations omitted), so as to avoid

> [t]he situation in which a plaintiff is able to maintain a claim of fraud by
> extracting an isolated statement from a document and placing it in the complaint,
> even though if the statement were examined in the full context of the document,
> it would be clear that the statement was not fraudulent.

*Id.*  Yet just because the court elects under these circumstances to examine documents outside of

the complaint does not mean that it need treat the motion as one for summary judgment.

*Burlington Coat,* 114 F.3d at 1426; *Pension Benefit Guar. Corp.,* 998 F.2d at 1196-97.

## III.   Legal Discussion[3]

### A.   Arbitration Provision

In determining whether an arbitration provision is enforceable, a court should reference

federal law.  *See Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179 (3d Cir. 1999) ("Questions

concerning the interpretation and construction of arbitration agreements are determined by

reference to federal substantive law.").  The Federal Arbitration Act ("FAA") requires

enforcement of a contractual arbitration provision.  The Act, in relevant part, states:

> A written provision in any...contract evidencing a transaction involving commerce
> to settle by arbitration a controversy thereafter arising out of such contract...or an
> agreement in writing to submit to arbitration an existing controversy arising out of
> such a contract...shall be valid, irrevocable, and enforceable, save upon such
> grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "By its terms, the [FAA] leaves no place for the exercise of discretion by a district

---

[3] Defendants also argue that the Court should grant their motion to dismiss because the Policy
contains a non-assignment provision.  The Court, however, declines from addressing this issue due to
equitable arguments made by Plaintiff's counsel and will limit its analysis to the other issues raised.

court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

In *Gay v. CreditInform*, 511 F.3d 369 (3d Cir. 2007), the Third Circuit reiterated the FAA's strong presumption in favor of arbitration. The appellant in *Gay* brought a class action suit against the appellee, who provided credit repair services. The agreement entered into between the appellant and appellee contained a provision that any claim arising out of or relating to the product would be settled by arbitration. The appellant argued that the claims were not arbitrable because the Credit Repair Organizations Act ("CROA") and the Pennsylvania Credit Services Act protected her right to assert her claims in a judicial forum and the CROA protected her right to bring a class action. The district court ordered the parties to arbitrate on an individual basis, and the appellant appealed. On appeal, the Third Circuit affirmed. The Third Circuit reasoned that nothing in the statutory history expressed any legislative intent to preclude the parties from arbitrating their dispute. The court explained that "in determining whether a matter should be arbitrated, there is a strong presumption in favor of arbitration, and doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Gay*, 511 F.3d at 387 (internal citations omitted).

"In interpreting [arbitration] agreements, federal courts may apply state law, pursuant to section two of the FAA." *Harris*, 183 F.3d at 179. Minnesota's Uniform Arbitration Act provides:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable, save upon such grounds

-8-

as exist at law or in equity for the revocation of any contract.

MINN. STAT. § 527.08 to 572.30.  The parties entered into a binding, written agreement to submit to arbitration if disputes over coverage arose.  In relevant part, the Policy stated:

> If we and the eligible injured person making a claim for personal injury protection benefits do not agree on the amount payable under this coverage, and the amount of the claim is $10,000 or less, the claim shall be submitted to binding arbitration pursuant to Minnesota Statutes Annotated § 65B.525.

Arnold Cert., Ex. B at 0087.  Moreover, Minnesota's No-Fault Automobile Insurance Act requires mandatory arbitration of all PIP payment disputes of $10,000 or less.  *See* MINN. STAT. § 65B.525 ("...mandatory arbitration of all cases at issue where the claim at the commencement of arbitration is an amount of $10,000 or less...").

Plaintiff's assertion that Minnesota's statute is narrowly construed in that no-fault arbitrators are limited to deciding factual issues and that Section 65B.525 "does not deprive courts [from deciding] legal questions" fails.  Pl. Opp. to Dismiss, pg. 26.  While the court in *Weaver v. State Farm Ins. Companies*, 609 N.W.2d 878 (Minn. 2000), recognized that "no-fault arbitrators are limited to deciding questions of fact, leaving the interpretation of law to the courts," the court then acknowledged that "[Minnesota courts] have adopted rules authorizing arbitrators in no-fault cases where the claim is for less than $10,000 to 'grant any remedy or relief deemed just and equitable.'" *Weaver*, 609 N.W.2d at 882 (citing Rule 32 Rules of Procedure for No-Fault Arbitration and MINN. STAT. § 65B.525).  Thus, the present dispute is covered by the arbitration provision.[4]

---

[4] Even under New Jersey law, the arbitration provision in the Policy is binding.  N.J.S.A. 39:6A-5.1 allows either a claimant or insurer to demand dispute resolution and that medical-provider assignees are bound by that decision.  *See also Coalition for Quality Healthcare v. N.J. Dept. of Banking and Ins.*, 348 N.J. Super. 272, 318 (N.J. Super. Ct. App. Div. 2002) (explaining that "an insurer is permitted to

Additionally, Plaintiffs argue that "'the claims' at issue here is not limited to the individual underpayments to Plaintiffs but instead encompasses the 'amount in controversy' Plaintiffs are seeking on behalf of themselves and the proposed class." Pl. Opp. to Dismiss, pg. 24. Plaintiff's Complaint, however, is based on the alleged "underpayment" of medical expenses reimbursement; without this "underpayment," Plaintiff would have no complaint. The Complaint clearly challenges Defendants' reimbursement payment to Plaintiff under the Policy's PIP coverage. Thus, the only claim at issue is that of this Plaintiff, and $1.51 underpayment dispute clearly falls within the ambit of Minn. Stat. 65B.525.[5] Furthermore, because the disputed claim does not encompass the larger claim that Plaintiff has asserted in its Complaint, Plaintiff's claim does not exceed the $10,000 controversy threshold of Minn. Stat. 65B.525.

Therefore, the Court finds that, pursuant to both federal and state law, the arbitration provision contained in the Policy is valid and enforceable, and the Complaint is subject to dismissal on that basis alone.[6]

---

require the submission of PIP disputes to the dispute resolution process" and "because a provider, with valid assignment, is bound by the same rights and remedies as an insured, the provider can be similarly bound to submit a PIP to dispute resolution"). Furthermore, N.J.S.A. 2A:23B-6 explicitly provides that "[a]n agreement in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." N.J.S.A. 2A:23B-6.

[5] In addition, because the Court finds that the amount in controversy is $1.51, Plaintiff fails to establish the Court's jurisdiction pursuant to 28 U.S.C. § 1332(a).

[6] Plaintiff argues that if the Court finds the arbitration provision is binding, then the Court should compel class-wide arbitration. The Court declines to do so. Procedural questions of the arbitration are not for the Court to decide, but rather, the arbitrator. *See Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003) (finding that questions of whether the arbitration provision allowed for class arbitration should be left to the arbitrator); *Certain Underwriters at Lloyd's v. Westchester Fire Ins. Co.*, 489 F.3d 580, 590 (3d Cir. 2007) (holding that "in light of the [ ] authority, the parties' agreement to arbitrate their disputes, contractual silence as to the consolidation issue, and the longstanding federal policy favoring arbitration, [the court sees] no reason why this procedural issue should not be resolved in arbitration).

B.    *Class Action Certification*[7]

"A defendant may move to strike class allegations prior to discovery in rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Clark v. McDonald's Corp.*, 213 F.R.D 198, 205 n.3 (D.N.J. 2003) (citing *Miller v. Motorola, Inc.*, 76 F.R.D. 516 (N.D. Ill. 1977). The Court finds that not only is Plaintiff unable to represent a class, as Plaintiff is obligated to submit its claims to arbitration, but each potential class member would also be required by their policies and/or state law to submit any dispute to arbitration. Moreover, maintenance of a class action is not possible because Plaintiff does not satisfy the requirements of Fed. R. Civ. P. 23.

Class actions are governed by Fed. R. Civ. P. 23. A proposed class representative seeking class certification must satisfy all four requirements of Fed. R. Civ. P. 23(a) and must also demonstrate that the action is maintainable under one of the three categories set forth in Fed. R. Civ. P. 23(b). *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 140 (3d Cir. 1998). In addition, a class must be adequately defined so that the individual class members may be easily identified. *See See, e.g. In re School Asbestos Litig.*, 789 F.2d 996, 1005 (3d Cir. 1986), *cert. denied* 479 U.S. 852 (1986). The burden of "establish[ing] that all four requisites of Rule 23(a) and at least one part of Rule 23(b) are met" rests with the plaintiff. *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994). Courts must undertake a "rigorous analysis" to ensure that the putative class and its proposed representative satisfy each of the prerequisites to class certification. *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982).

---

[7] Plaintiff proposes two subclasses for the class action. The Court adopts its reasoning for both subclasses.

In considering whether certification is appropriate, a court must refrain from conducting a preliminary inquiry into the merits of the action. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). However, it may be necessary for the court "to analyze the elements of the parties' substantive claims and review facts revealed in discovery in order to evaluate whether the requirements of Rule 23 have been satisfied." *In re Ford Motor Co. Ignition Switch*, 174 F.R.D 332, 339 (D.N.J. 1997).

> i.      *Fed. R. Civ. P. 23(a) Requirements*

Federal Rule of Civil Procedure 23(a) provides that:

> [o]ne or more members of a class may sue or be used as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).

**Numerosity.** "Numerosity requires a finding that the putative class is 'so numerous that joinder of all members is impracticable.'" *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182 (3d Cir. 2001) (quoting FED. R. CIV. P. 23(a)(1)). Here, it is clear the numerosity requirement is met as Plaintiff alleges that thousands of potential class members exist and joinder would be impracticable. Compl. ¶¶ 69-70.

**Commonality.** Commonality requires the existence of questions of law or fact common to members of the proposed class. FED. R. CIV. P. 23(a)(2). "A finding of commonality does not require that all class members share identical claims...'the commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of

the prospective class.'" *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 310 (3d Cir. 1998) (quoting *Baby Neal*, 43 F.3d at 56)).  This requirement is substantially less then than the predominance requirement of Fed. R. Civ. P. 23(b)(3).

Plaintiff asserts, generally, that "the claims of Plaintiff and the Class are based upon the same standard form insurance Policy, the same material non-disclosures and the same scheme to improperly cap claims."  Compl. ¶ 71.  This common thread is adequate to establish commonality between all potential class members' claims.

**Typicality.**  Class representatives must be typical of the class as a whole in order for the class to be certified.  FED. R. CIV. P. 23(a)(3).  In considering the typicality requirement, a court must determine whether "the named plaintiff's individual circumstances are markedly different or...the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based."  *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985) (internal citation omitted).  *See also Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 923 (3d Cir. 1992) (finding typicality if the circumstances "arise[] from the same event or practice or course of conduct that gives rise to the claims of the class members, and ... [are] based on the same legal theory") (internal citation omitted).  Conversely, a representative's claims would be atypical if his "factual or legal stance is not characteristic of that of the other class members."  *Weiss v. York Hosp.*, 745 F.2d 786, 810 (3d Cir. 1984).

Typicality  "does not mandate that all putative class members share identical claims." *Barnes*, 161 F.3d at 141.  So long as "the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences."  *Newton*, 259 F.3d at 183-84.  A claim "framed as a violative practice can

support a class action embracing a variety of injuries so long as those injuries can all be linked to the practice." *Baby Neal*, 43 F.3d at 63.  Here, although factual differences exist, because Plaintiff alleges that Defendants have engaged in fraudulent conduct by utilizing the fee review and not fully reimbursing Plaintiff and other class members, the typicality requirement is met.

**Adequacy.**  Adequacy requires a court to consider whether "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4); *see also East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) ("a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members") (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)).  "The Rule 23(a)(4) analysis involves a two-pronged inquiry: (1) whether the named plaintiffs' counsel is competent by qualification and experience to conduct the litigation, and (2) whether the named plaintiffs' interests are antagonistic to those of the class." *Cannon v. Cherry Hill Toyota, Inc.*, 184 F.R.D. 540, 544 (D.N.J. 1999).  The adequacy of representation requirement overlaps with Rule 23(a)(2)'s commonality requirement and Rule 23(a)(3)'s typicality requirement, to the extent that all three requirements call for the Court to determine whether judicial economy and the procedural due process rights of the putative class members will be served by the certification of the class.  *Falcon*, 457 U.S. at 157 n. 13.

Plaintiff argues that it could adequately represent the class because class members, whether an insured or a medical provider, have the same interest in having their medical bills reimbursed in full.  Furthermore, Plaintiff asserts that the class definition contemplates any potential conflicts between insured class members and medical provider class members; class membership would not include: individuals whose claims were submitted to Defendants' special

investigative/fraud unit, MedPay claims that were denied for non-fee review based reasons, claims paid pursuant to a state's automobile fee schedule where the code was a scheduled fee and payment was made in the amount of the scheduled fee, or any individuals with a controlling interest in the insurer or those individuals' immediate family members.  Pl. Opp. to Strike, pg. 24-25.

Despite Plaintiff's class definition, Plaintiff could not adequately represent the class. Because Plaintiff must submit its claim to binding arbitration in Minnesota, Plaintiff could not properly appear before the Court, let alone adequately represent an entire class of insureds and medical providers before the Court. Therefore, the Court finds the adequacy requirement of Fed. R. Civ. P. 23(a)(4) is not met, and the Court will not certify the class.

> ii.    *Fed. R. Civ. P. 23(b)(2) Requirements[8]*

Once a plaintiff has demonstrated that it has met the prerequisites of Fed. R. Civ. P. 23(a), a plaintiff must meet one of the three requirements of Fed. R. Civ. P. 23(b).  Class certification, pursuant to Fed. R. Civ. P. 23(b)(2), is appropriate if:

> [T]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

FED. R. CIV. P. 23(b)(2).  Courts in this circuit have held "that 23(b)(2) is only applicable where the relief sought is exclusively or predominately injunctive or declaratory in nature...[c]onversely, 23(b)(2) has been held inapplicable when the relief sought in the complaint

---

[8] Even if the Court had found that the requirements of Fed. R. Civ. P. 23(a) had been met, the Court would still decline to certify the class because Plaintiff would be unable to meet requirements for maintaining a class action under Fed. R. Civ. P. 23(b)(2) or (b)(3).

is predominately money damages." *Angelastro v. Prudential-Bache Securities, Inc.*, 113 F.R.D. 579, 583 (D.N.J. 1986) (internal citations omitted).

Although Plaintiff seeks declaratory relief in its Complaint, Plaintiff also asks for monetary damages. The Court, in considering the Complaint as a whole, cannot conclude that the relief sought is predominately injunctive in nature. Two counts of Plaintiff's three-count Complaint ask the Court for monetary relief. Accordingly, Plaintiff's motion to certify the class based upon Fed. R. Civ. P. 23(b)(2) is denied.

iii.    *Fed. R. Civ. P. 23(b)(3) Requirement*s

For class certification under Fed. R. Civ. P. 23(b)(3), the requirements of predominance and superiority must be met.

a.    Predominance

Predominance demands "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "Unlike commonality, predominance is significantly more demanding, requiring more than a common claim." *Newton*, 259 F.3d at 187. Class treatment is inappropriate where individual questions regarding the claims overpower the common ones. *See In re Merrill Lynch, et al. Sec. Litig.*, 191 F.R.D. 391, 396 (D.N.J. 1999) (reasoning that although there may be "several common questions...class treatment was inappropriate because 'each of the individual plaintiff's claim raises radically different factual and legal issues from those of other plaintiffs...'") (quoting *Georgine v. Amchem Prods.*, 83 F.3d 610, 618 (3d Cir. 1996)).

Predominance has not been found in cases where "significant individual issues surround[] each claim." *Newton*, 259 F.3d at 189.

"The chief difficulty in finding a predominance of common legal issues [occurs when] statutory protections vary greatly from state to state." *Ford Motor Co.*, 194 F.R.D. 484, 489 (D.N.J. 2000).  Applying numerous state laws, even if the slightest differences exist between the laws, can render a class action unmanageable.  *See id.* at 491 ("[T]he practicalities of applying such varied state law would demand significant attention from [a court], not the least of which would be instructing the jury or juries consistent with the law of each relevant state."); *see also In re Am. Med. Systems, Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996) ("If more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law, yet another reason why class certification would not be the appropriate course of action.").

The existence of variations in state law alone, however, is not enough to preclude class certification.  *See, e.g. School Asbestos*, 789 F.2d at 1011 (affirming the conditional class certification despite the practical manageability problems because of the nature of asbestos litigation).  It is up to the district court to determine whether variations in state law defeat predominance.  *See Ford Motor Co.*, 174 F.R.D. at 349 ("'Prior to certification the district court must determine whether variations in state law defeat predominance.'") (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 750 (5th Cir. 1996)).

The Court finds that granting certification to the class would render the action unmanageable for several reasons.  First, New Jersey choice of law rules require that the Court apply the laws of the class members' home states.  In a diversity case, the forum state's choice of

law rule governs.  *See Gen. Star Nat. Ins. Co. v. Liberty Mut. Ins. Co.*, 960 F.2d 377, 379 (3d Cir. 1992) ("As this is a diversity case, we apply the forum state's choice of law rule.").  Because insurance policies are construed as contracts between the insurance company and the policyholder, "the law of the place where the contract is to be performed is the law which governs as to its validity and interpretation."[9]  *London Assurance v. Companhia De Moagens Do Barreiro*, 167 U.S. 149, 160 (1897).  New Jersey follows this rule.  *See State Farm Mut. Auto. Ins. Co. v. Simmons' Estate*, 84 N.J. 28, 37 (N.J. 1980) ("in an action involving the interpretation of an automobile liability insurance contract, the law of the place of the contract will govern the determination of the rights and liabilities of the parties under the insurance policy").

Plaintiff contends that "generally applicable contract law governs Plaintiff's claims" and that they "are not challenging the individual determinations of reasonableness for the claims of individual class members, but the uniform process that Defendants apply to all claims."  Pl. Opp. to Strike Class, pg. 7-8.  However, in determining whether Defendants breached the insurance policy, by not paying "reasonable medical expenses" as Plaintiff alleges, the Court must first address whether the uncovered medical expenses were reasonable or unreasonable.  This analysis, therefore, requires the application of the different state laws contained in the express provisions of the policies.  For instance, the Court must look to Minnesota law, as expressly

_____

[9] Plaintiff argues that "New Jersey follows a flexible governmental interest analysis on an issue-by-issue basis."  Pl. Opp. to Strike Class, pg. 7.  This is true for tort cases.  *See e.g. Fu v. Fu*, 160 N.J. 108, 118 (N.J. 1999) ("In tort cases, New Jersey has rejected the traditional rule of *lex loci delicti*...instead, we now apply a more flexible 'governmental-interest' test that seeks to apply the law of the state with the greatest interest in governing the specific issue in the underlying litigation.") (internal citations omitted).  The supporting case Plaintiff cites, *Erny v. Estate of Merola*, 171 N.J. 86 (N.J. 2002), was a tort case involving joint and several liability in a motor vehicle accident.  Because the present action involves an insurance policy, the Court will follow the established choice-of-law rules for contracts.

provided in the policy, when determining whether Defendants paid for the "reasonable" expenses of the insured.  In making this determination, the Court would consider the policy terms and Minnesota's PIP laws.  Minnesota law, however, would not apply to a class member whose policy was entered into in another state.  Therefore, because the class potentially includes plaintiffs from each of the fifty states, fifty different state laws could apply to the insurance policies, rendering the class action unmanageable.

Furthermore, Plaintiff claims that "numerous cases have either certified exactly the same type of claims at issue here...or reversed lower courts' denial of certifications."  Pl. Opp. to Strike Class, pg. 9.  The cases Plaintiff cites are not controlling.[10]  Moreover, a closer look at *LaBerenz v. Am. Family Mut. Ins. Co.*, 181 P.3d 328 (Colo. Ct. App. 2007) and *Reyher v. State Farm Mut. Auto. Ins. Co.*, 171 P.3d 1263 (Colo. Ct. App. 2007) reveals a different conclusion.  In *LaBerenz*, although the appellate court reversed the lower court's denial of class certification as to the health provider members, it remanded the matter for further findings.  The class action requirements of Colo. R. Civ. P. 23 mirror those of Fed. R. Civ. P. 23.  The appellate court found that the lower court improperly held that the health providers did not meet the numerosity and typicality requirements of Colo. R. Civ. P. 23(a), but the matter was remanded for further findings as to whether the action met the adequacy requirements of Colo. R. Civ. P. 23(a)(4), as well as the additional requirements under Colo. R. Civ. P. 23(b), in order to certify the class. Similarly, in *Reyher*, the trial court had originally granted summary judgment in favor of the

---

[10] *Goodman v. Mercury Ins. Co.*, J.C.C.P. No. 4249 (Cal. Sup. Ct. Jan. 11, 2007), *Strawn v. Farmers Ins. Co. of Oregon*, Case No. 9908-09080 (Or. Cir. Ct. Jun. 15, 2005), and *Coffell v. Allstate Ins. Co.*, No. 05-2-33183-6SEA (Wash. Sup Ct. Nov. 9, 2006) were decided outside of this circuit. Furthermore, the courts' reasoning in these decisions do not fully address the issues Defendants raise as to why the Court should not certify the class.

insurer, which the court determined rendered the class action claims moot.  On appeal, the court

reversed the summary judgment decision and remanded the case to revisit whether the class

should be certified.

Plaintiff also cites to *Brooks v. Educators Mut. Life Ins. Co.*, 206 F.R.D. 96 (E.D. Pa.

2002).  Plaintiff asserts that the *Brooks* court certified a class "where the plaintiffs allege[d] that

insurers engage[d] in common courses of conduct against their insureds" and that the "rationale

supporting certification in *Brooks* applies with equal force to this case."  Pl. Opp. to Strike Class,

pgs. 9, 11.  The plaintiffs in *Brooks*, however, instituted a single claim action - that the insurer

failed to pay for anesthesia services in accordance with its policies, in violation of the Employee

Retirement Income Security Act, 29 U.S.C. § 1001.  Unlike the present action, the *Brooks*

complaint contained no allegations of state law; addressing one federal law is much more

manageable than fifty varying state laws.

Second, the laws of each of the potential class members' home states conflict.  PIP

insurance coverage differs between states and are governed by statute.  PIP statutes address

issues such as specifying what type of medical expenses must be covered, what amounts insurers

are obligated to pay, or whether insurers are permitted to coordinate their PIP payments for

medical expenses with payments from other sources.  A survey of the relevant PIP statutes

indicates that differences, such as these, result in individualized issues.

Plaintiff contends that differing PIP statues among states is irrelevant.  Plaintiff argues

that its assertion that "the software reductions are arbitrary...[] bear no relationship to whether a

charge is 'reasonable' or 'unreasonable.'"  Pl. Opp. to Strike Class, pg. 12.  The Court disagrees.

Plaintiff is entitled to reimbursement of "reasonable" medical expenses.  If the amount Plaintiff

received from Defendants is "reasonable," regardless of how the reimbursement was calculated, then there is no breach of the policy.  Determining whether the reimbursement was "reasonable" or "unreasonable," in light of the states' varying statutes, would be unmanageable as a class action.

Third, although some courts have held that medical review tools may be questioned, they cannot be addressed in a class-based proceeding because an individualized evaluation must be conducted in determining the reasonableness and necessity of medical bills.[11]  In *Ralph v. Am. Family Mut. Ins. Co.*, 835 S.W.2d 522 (Mo. Ct. App. 1992), the plaintiff filed a class action complaint on behalf of persons insured by the defendant who had not received full medical payment benefits as a result of a set-off provision in the policy, which reduced medical payments by the amount received under uninsured motorist coverage.  Because the Missouri Supreme Court declared in another case that this type of set-off provision was invalid, the trial court in *Ralph* denied class certification since the question of the set-off provision's validity was no longer an issue common to the class.  The appellate court affirmed and reasoned that

> "the issues remaining in cases to recover medical payments were fact questions such as whether the policy contains medical payment coverage, the amount of medical treatment, whether that treatment was necessary, whether the charges are reasonable, and whether the treatment was for injuries sustained in the accident. All of those questions are specific to the individual claimant, not common to the class."

*Ralph*, 835 S.W.2d at 524.  *See also Creveling v. Gov't Employees Ins. Co.*, 828 A.2d 229, 242 (Md. 2003) (explaining that whether the medical treatment received was necessary and related to

---

[11] Additionally, the Court considers that because class membership could potentially include individual insureds, solo practitioners, group practitioners, or other types of medical providers, individual inquiries into what is "reasonable" for each type of insured or medical provider seeking reimbursement would be necessary.

the accident and whether the treatment fees were reasonable would have to be determined on an individual basis).

In *State Farm Mut. Auto. Ins. Co. v. Sestile*, 821 So. 2d 1244 (Fla. Dist. Ct. App. 2002), State Farm's policy was to reimburse the insured for 80% of the reasonable charges incurred for necessary medical treatments for automobile accidents.  The insureds' filed a declaratory action asserting that State Farm's use of a computer-generated database to determine the reasonableness of insureds' medical bills violated Florida law and the insurance policy.[12]  The court reversed the lower court's ruling that an insurer could not decline to pay less than the entire medical bill of an insured based on the computerized bill review.  The court reasoned that it is "not a court's function to determine, across the board, that an insurer's internal method of gauging reasonableness does or does not comply with the statute." *Sestile*, 821 So. 2d at 1246.  Further, when the legislature does not provide guidance as to what is reasonable, the court explained that it is the fact-finder's responsibility to determine reasonableness and, then, whether the insurance company's evaluation was reasonable on a case-by-case basis.  "In some cases, a computer database may accurately assess the reasonableness of a medical provider's bill; in other cases, it may be far from the mark." *Id.*  Thus, it would be necessary for the Court to analyze each class member's claim to determine whether the partial reimbursement was reasonable.

---

[12] Plaintiff interpreted the relief the *Sestile* insureds requested to be "that the court issue a declaratory judgment holding that no insurance company could use computer software to determine 'reasonableness,' *ever*."  Pl. Opp. to Strike, pg. 14 (emphasis in brief).  Contrary to Plaintiff's interpretation, the *Sestile* plaintiffs did not make any demands on the court to make a sweeping declaration against an industry-wide practice; rather, the *Sestile* plaintiffs merely asked the court "to find that State Farm's use of a computer-generated database to determine the reasonableness of medical bills violated [Fla. Sta. § 627.736] and the insurance contract." *Sestile*, 821 So. 2d at 1245.  Plaintiff appears to be seeking the same narrow relief as the *Sestile* plaintiffs.

Lastly, when seeking class certification, Plaintiff must make an effort "to suggest a plan regarding how the present case could be handled in a manageable way in view of the necessity to apply the laws of fifty-one jurisdictions." *Ford Motor*, 174 F.R.D. at 350.  In other words, "movants must creditably demonstrate, through an 'extensive analysis' of state law variances, 'the class certification does not present insuperable obstacles.'" *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986) (quoting *School Asbestos*, 789 F.2d at 1010).

The *Ford Motor* plaintiffs brought an action against the defendants alleging that the defendants manufactured vehicles with faulty ignition switches, which caused fire damage when a short circuit occurred.  Plaintiffs sought class certification, which the court denied without prejudice.  In a subsequent proceeding, the plaintiffs proposed an amended class definition that contemplated two specific subclasses, but the court still denied class certification because the predominance and superiority requirements of Fed. R. Civ. P. 23(b)(3) were not met.  In the original matter, the court denied class certification, reasoning that a class action would be unmanageable and impractical.  The court found that the plaintiffs did "not explain[] how their multiple causes of action could be presented to a jury for resolution in a way that fairly represents the law of the fifty states while not overwhelming the jurors with hundreds of interrogatories and a verdict form as large as an almanac." *Ford Motor* at 350.

Here, Plaintiff has not suggested any blueprint for case management other than highlighting the possible common issues of law or fact.  Plaintiff has failed to address how the Court could effectively manage a three-count complaint, with thousands of potential plaintiffs, in states across the country.  There is no litigation plan that puts forth a proposal regarding the variations in state law and individualized issues, and how the Court can effectively and

efficiently try the case.  "Each individual plaintiff's claim raises radically different factual and

legal issues from those of other plaintiffs.  These differences, when exponentially magnified by

choice of law considerations, eclipse any common issues in this case.  In such circumstances, the

predominance requirement of Rule 23(b) cannot me met."  *Georgine* 83 F.3d at 618.  For the

same reasons expressed by the *Georgine* court, the Court cannot certify the class.

> b.      Superiority

Superiority requires that the class action is superior to all other means of resolving the

controversy and achieves a "fair and efficient adjudication of the controversy."  FED. R. CIV. P.

23(b)(3).  In evaluating whether a class action is the superior means for adjudication, a court

must consider "the desirability or undesirability of concentrating litigation of the claims in the

particular forum...[and] the difficulties likely to be encountered in the management of the class

action."  *Id*.  Manageability of a class action "encompasses 'the whole range of practical

problems that may render the class action format inappropriate for a particular suit.'"  *Newton*,

259 F.3d at 191 (quoting *Eisen*, 417 U.S. at 164).

The Court determines that a class action is not superior to all other means of resolving the

present controversy.  As previously discussed, this type of action involves an individualized

inquiry into each of the claims to determine whether actual injury occurred to each insured.

Furthermore, Defendants would have the right to raise defenses against each individual claim.

Plaintiff alleges that there are thousands of potential class members; from a manageability

standpoint, it is hard to imagine how this case could be tried efficiently and effectively.

**IV.    Conclusion**

For the reasons stated above, the Court finds (a) that the arbitration provision within the Policy is binding, and (b) Plaintiff is not entitled to class certification.  Thus, Defendants' motion to dismiss Plaintiff's Complaint is granted.  An appropriate order follows.


/s/ JOEL A. PISANO
United States District Judge


Dated: August 26, 2008